Darold W. Killmer
Wyoming Bar N. 8-6643
Reid Allison*
Madison Lips*
KILLMER LANE, LLP
1543 Champa Street, Suite 400
Denver, CO  80202
PHONE (303) 571-1000; FAX (303) 571-1001
Email: dkillmer@killmerlane.com; rallison@killmerlane.com; mlips@killmerlane.com

*Motion for admission pro hac vice forthcoming.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

ADRIANAH RODRIGUEZ,              )
                                )
      Plaintiff,                )
                                )
v.                              )      Civil Action No.
                                )
CITY OF CASPER, WY;             )
OFFICER MICHAEL QUIRIN;         )
OFFICER RYAN LOWRY              )
in their individual capacities, )
                                )
      Defendants.               )

## COMPLAINT AND JURY DEMAND

     Plaintiff Adrianah Rodriguez, by and through her counsel, Darold W. Killmer, Reid Allison, and Madison Lips of KILLMER LANE, LLP respectfully alleges for her Complaint and Jury Demand as follows:

## I.     INTRODUCTION

And then they stole our solace
(I can't cry no more)
And then they stole our peace
(I can't cry no more)
With countless acts of malice
(I can't cry no more)
And hatred without cease
(I can't cry no more)


A foul and dirty river
(I can't cry no more)
Runs through this sacred land
(I can't cry no more)
With every act of terror
(I can't cry no more)
They tell us where we stand
(I can't cry no more).[1]

1.      On the night of January 5, 2020, Adrianah Rodriguez, a law-abiding, young

Black/Latina woman, was attending a small party at her friend's apartment in Casper. Shortly

after Ms. Rodriguez arrived, Defendant Casper Police Officers Michael Quirin and Ryan Lowry

arrived at the party in response to a noise complaint. At no point that night did either Defendant

Quirin or Defendant Lowry have reasonable suspicion or probable cause to believe Ms.

Rodriguez had committed or was in the process of committing any crime. Even though Ms.

Rodriguez was actively complying with Officer Quirin's demands for her identification, he

retaliated against her for exercising her First Amendment protected rights by violently dragging,

kicking, and body slamming her to the floor. Defendant Quirin then unlawfully arrested Ms.

---

[1] "Cry No More," Rhiannon Giddens, https://youtu.be/PU3cGLtULeI,
https://lyricsfa.com/rhiannon-giddens-cry-no-more-lyrics/,
https://blackwiki.org/index.php/Cry_No_More_by_Rhiannon_Giddens_(2015). Ms. Giddens is
the recipient of the 2023 Pulitzer Prize Award.

Rodriguez and took her to jail, where she was forced to spend the night and most of the following day. The charges against her were meritless and were dismissed the very next day.

## II.    JURISDICTION AND VENUE

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.  This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conveyed by 42 U.S.C. § 1988.

3.    The acts described herein were committed within the jurisdiction of the United States District Court for the District of Wyoming. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III.    PARTIES

4.    At all times relevant to this Complaint, Adrianah Rodriguez was a citizen of the United States and was domiciled in the State of Wyoming.

5.    Defendant City of Casper is a governmental entity organized under the laws of the State of Wyoming and is a suable "person" pursuant to 42 U.S.C. § 1983.

6.    At all times relevant to this Complaint, Defendant Michael Quirin was employed as a law enforcement officer by the Casper Police Department ("CPD") and was acting in the course and scope of his employment and under the color of state law.

7.    At all times relevant to this Complaint, Defendant Ryan Lowry was employed as a law enforcement officer by CPD and was acting in the course and scope of his employment and under the color of state law.

## IV.    FACTUAL ALLEGATIONS

8.      In the early morning of January 5, 2020, Adrianah Rodriguez was attending a small party at her friend's apartment.

9.      Ms. Rodriguez and her friends had not been at the party for long when Defendant CPD Officers Michael Quirin and Ryan Lowry arrived in response to an alleged noise complaint.

10.     While walking up the steps to the apartment, Officer Quirin remarked to Officer Lowry, "It's not that loud." He was right.

11.     Around one minute after announcing their presence, one of the party attendees opened the door and the officers barged into the apartment without consent or any apparent exigency.

12.     The officers possessed no search or arrest warrant and had no other legal basis to enter the apartment.

13.     By the time Defendants entered the apartment and through the moment they left, it was clear to them (and would have been clear to any reasonable officer) that the only thing that was occurring in the apartment was a small, low-key party among friends.

14.     Even though the young people in the apartment were complying with directives in a calm but bewildered manner, Defendant Quirin immediately began ordering people to "stand over there" and began physically moving people to one side of the apartment.

15.     He then proceeded to go into a bedroom and forcefully order a young man sleeping in bed in his underwear to get up, aggressively shoving him and yelling at him to "stand over there and get your damn pants on!"

16.     Throughout Defendants' interactions with those in the apartment, it was clear that there was no exigent circumstance, criminal activity, or threatening behavior.

17.     Ms. Rodriguez—the only Black/Latina woman in attendance—was the first person at the party to volunteer her identification to Officer Quirin.

18.     While she was in the process of offering him her ID card, Ms. Rodriguez—a 120-pound, 5'3" woman—calmly and politely stated that the officer was "mistreating people" and that "I know my rights."

19.     In response, Officer Quirin threatened "Ma'am would you like to be quiet or would you like to be in custody?"

20.     Ms. Rodriguez momentarily put her hand with her ID behind her back as she replied, "no I would not like to be in custody."

21.     Immediately and without warning, Defendant Quirin—a much larger 54-year-old man—responded to Ms. Rodriguez's lawful exercise of her First Amendment right to free speech by brutally manhandling her and aggressively taking her down to the floor.

22.     Ms. Rodriguez's verbal, nonthreatening, and constitutionally protected exchange with Defendant Quirin lasted a mere fifteen seconds before Defendant Quirin violently grabbed her and inflicted unnecessary and excessive physical force upon her.

23.     Defendant Quirin later blatantly lied in his report that Ms. Rodriguez "refused" to move away from the others – rather, Defendant Quirin immediately grabbed her and dragged away from the others without her being given an opportunity to comply with him asking her to "step outside."

24.     After shoving Ms. Rodriguez to the floor and forcing her arms behind her back, Quirin repeatedly screamed at her to stop resisting.

25.     Ms. Rodriguez was terrified by this profoundly disproportionate and aggressive officer conduct and instinctively tried to ball up to protect herself from her aggressor.

26.     Defendant Quirin placed his entire body weight on Ms. Rodriguez's back and wedged his knee into the back of her neck.

27.     Neither Defendant Quirin nor Defendant Lowry made any efforts to de-escalate the situation, instead immediately escalating it to substantial physical force.

28.     Defendants Quirin and Lowry had deliberately and/or recklessly engaged in conduct which created a circumstance which they then unreasonably determined justified the use of force on Ms. Rodriguez.

29.     Defendant officers lacked probable cause to arrest Ms. Rodriguez.

30.     Defendant Quirin used greater force than would have been necessary to effect a lawful arrest even if there had been a basis to effect a lawful arrest.

31.     Quirin blatantly lied (again) in his report that Ms. Rodriguez "was screaming obscenities at Officer Quirin" while she was being assaulted. Rather, she was sobbing and repeating "I'm not resisting," "I have my ID," and "you're hurting me."

32.     Witnesses described Quirin "throwing [Ms. Rodriguez] around like a rag doll."

33.     Officer Lowry, apparently alarmed by Officer Quirin's disproportionate use of force after he placed his knee on Ms. Rodriguez's neck, stated, "Quirin, Quirin," a few times, but did nothing more to intervene to stop him from harming Ms. Rodriguez.

34.    Ms. Rodriguez was terrified, and suffered a panic attack during and after the assault and repeatedly stated "I can't breathe" as she loudly hyperventilated.

35.    After he was finished brutalizing Ms. Rodriguez into handcuffs, Officer Quirin stood up and forcefully stated to the other people present, "stop – next person to talk goes in handcuffs."

36.    At that moment, Alexander Fuller, another individual at the party, was on the phone relaying the horrifying scene he was witnessing to his father, who is a lawyer.

37.    Quirin, apparently to punish Mr. Fuller for talking with his father and to deter any further conduct or statements in opposition to the officers' behavior, retaliatorily handcuffed Mr. Fuller as well, thus making good on his stated threat to punish anyone who verbally opposed this police misconduct.

38.    Throughout this incident, Defendant Lowry did nothing to intervene to stop Defendant Quirin from using what he knew to be unlawful force. He watched Defendant Quirin manhandle Ms. Rodriguez (and other individuals in the apartment) without making any effort to stop him.

39.    Defendant Lowry stood immediately next to Defendant Quirin, as Quirin inflicted obvious retaliation and excessive force against Ms. Rodriguez on the floor.

40.    Defendant Lowry did nothing to intervene to stop this excessive use of force.

41.    Instead, he facilitated Defendant Quirin's actions by standing guard and talking to the other individuals at the party while Defendant Quirin forced Ms. Rodriguez into handcuffs.

42.     A few minutes later, Sergeant Marcus Maton arrived on scene. Sergeant Maton was thereafter the supervisor on the scene. Officer Quirin and Sergeant Maton then took Ms. Rodriguez outside.

43.     Sergeant Maton, apparently doubtful that any crime had been committed, asked Quirin twice "what are we going to do with her?" to which Quirin finally responded (after clear hesitation) "probably interference."

44.     Officer Quirin then began to recount to Ms. Rodriguez his alleged basis for charging her, and claimed falsely that Ms. Rodriguez then fought with him, which Ms. Rodriguez denied truthfully and vehemently.

45.     Sergeant Maton then tried to shut down this argument between Quirin and Ms. Rodriguez by saying "either we have PC (probable cause) or we don't," at which point Officer Quirin apparently decided to double down on his choices, knowing that he had intentionally given false facts to justify her arrest, and informed Ms. Rodriguez she was under arrest for interference with a peace officer.

46.     Ms. Rodriguez was forced to spend the night and most of the following day at the Natrona County Detention Center. The baseless charge against Ms. Rodriguez was dismissed the very next day.

47.     Defendants' unlawful conduct caused Ms. Rodriguez significant injuries, damages, and losses.

48.     Officer Quirin's and Lowry's conduct as described herein was engaged in pursuant to the training, customs, policies, and practices of the Casper Police Department ("CPD").

49.     Defendant Casper has an established recent history of similar constitutional violations.

50.     In April 2017, CPD officers approached Tim Haid while he was parked in his truck on a public street, innocently waiting for his girlfriend to return home. Knowing only that a truck had been parked for about an hour and that a 911 caller had asked officers to check on it, CPD officers asked Mr. Haid to identify himself. Mr. Haid respectfully declined to do so, knowing his constitutional right not to answer in this consensual encounter. Officers then angrily proceeded to drag Mr. Haid out of his truck, forcefully throw him to the ground, and handcuff him, breaking his glasses, cutting his face, and giving him a black eye in the process.

51.     Though he had done nothing wrong, Mr. Haid was charged with interference with a peace officer, just as Ms. Rodriguez was in this case. On appeal of his conviction, Natrona County District Judge Forgey held that Mr. Haid had the constitutional right to refuse to provide his identification, and his conviction was overturned.

52.     Mr. Haid settled his First and Fourth Amendment civil rights claims arising out of these events for $149,000.

53.     In November 2017, Carrie Gomez was in her home when then-CPD Officer Marcus Maton (who had been promoted to Sergeant Maton by the time Ms. Rodriguez was assaulted and arrested by Officer Quirin) arrived looking for a minor who had run away from home. Officer Maton did not have a warrant, and Ms. Gomez stated she would go search for the minor and told the officer he did not have permission to enter the home. Officer Maton, having no search warrant and knowing he had not been given consent to enter the house, nevertheless

entered the home anyway and forcefully shoved Ms. Gomez aside to search for the minor. Officer Maton then arrested Ms. Gomez and took her to jail, though she had done nothing wrong.

54.    Ms. Gomez was wrongfully charged with interference with a peace officer—the same charge as that levelled against Ms. Rodriguez—and on appeal from her initial conviction she won, resulting in acquittal of all charges. Natrona County District Judge Johnson held that Ms. Gomez's "constitutional right to be free from illegal search and seizure under the Fourth Amendment to the United States Constitution was violated," and her conviction could not constitutionally stand.

55.    Ms. Gomez settled her civil rights claims against Casper for $85,000.

56.    CPD's promotion of Sergeant Maton is the culmination of his more than two decades of constitutional violations as a police officer in Casper. In July 1999, Officer Maton and two other officers responded to a domestic disturbance call in Casper when they found 86-year-old Virgil Lore sleeping in his basement. Officer Maton and the other officers beat Mr. Lore, threw him to the floor, handcuffed him, and charged him with interference. Mr. Lore brought a civil rights action alleging that the events violated his constitutional rights. The case settled out of court for an undisclosed amount of money in May 2000.

57.    In 2005, a federal jury awarded Jennifer English and her two children $200,000 in damages for excessive force inflicted by Officer Maton and two other officers. The officers were responding to a report of a robbery at a nearby bakery in Casper when Officer Maton decided to stop Ms. English in her truck, despite the fact that the suspects were two teenage boys. Officer Maton forced Ms. English and her son to walk backward and kneel while officers handcuffed them at gunpoint, while her daughter watched in terror in the truck.

58.    In 2006, Officer Maton and the city of Casper were again sued for illegally charging James Mothersbaugh with interference with a police officer after Mr. Mothersbaugh became confused about how to proceed through an emergency lane closure. Officer Maton directed Mr. Mothersbaugh to merge with westbound traffic, and when Mr. Mothersbaugh did so, Officer Maton motioned with his index and middle fingers that he was "watching" Mr. Mothersbaugh. Mr. Mothersbaugh opened his door and told Maton "it was an honest mistake," so Officer Maton arrested Mr. Mothersbaugh and charged him with interference. The city dismissed the criminal charges against Mr. Mothersbaugh in 2007.

59.    Casper's custom of excessive force and First Amendment retaliation has continued unabated through CPD's officers' mistreatment of Ms. Rodriguez in 2020 to the present.

60.    In March 2022, Brent Eckerson was walking back to his home when CPD officers responded to a call of public intoxication. Mr. Eckerson was first confronted by a CPD officer when Mr. Eckerson was standing on his own porch. The officer invaded the curtilage of Mr. Eckerson's home to shout at Mr. Eckerson, while training his firearm on him. Mr. Eckerson entered his home and refused to consent to the officer's entry. The officer had no warrant or exigent circumstances, but even so he barged into Mr. Eckerson's home, brutally took him down (causing substantial injuries), and arrested him.

61.    In this case, Defendant Quirin's and Defendant Lowry's conduct was approved by Defendant Casper, demonstrating that such conduct was authorized and within approved practices and policies of the city.

62.     Defendant Casper failed to properly train, supervise, and discipline Officers Quirin and Lowry, despite the obvious need for scrutiny in specialized trainings, supervision, and discipline regarding decisions about searches, entries, seizures, and arrests, and the fact that its current customs, polices, and/or practices with respect to training, supervision, and discipline have before and are clearly likely to result in future flagrant violations of individual citizens' constitutional rights.

63.     The need for more or different training than that provided to these officers in how to conduct themselves in such or similar circumstances is obvious. Because the inadequacy of such training is likely to result in violations of individuals' constitutional rights, the policymakers of Casper can reasonably be said to have been deliberately indifferent to this need. Accordingly, Casper is responsible for its failure to provide proper training and thus may be held liable for causing Ms. Rodriguez's injuries.

64.     As made clear by his blatantly unconstitutional use of excessive force, Defendant Quirin was not properly trained on Fourth Amendment strictures for the use of force.

65.     As made clear by his failure to intervene in Defendant Quirin's blatantly unconstitutional use of excessive force, Defendant Lowry was not properly trained on the Fourth Amendment, or how to conduct a lawful seizure or arrest or the duty to intervene when an officer sees another officer inflict excessive force.

66.     Defendant Quirin's actions and Defendant Lowry's failure to intervene also demonstrate an overt disregard for Ms. Rodriguez's First Amendment rights, which further highlights that the CPD officers were not properly trained or supervised on these and other constitutional rights.

67.     Defendant Casper's approval of the Individual Defendants' blatantly unconstitutional actions sends a clear and unequivocal message to its employees by *training* them that the use of such force is acceptable and consistent with organizational policy. Sending the message that such unjustified and unconscionable force is approved practice will inevitably result in future violations of individuals' constitutional rights by CPD Officers.

68.     Defendant Casper clearly condones constitutional violations among its police officers, as is made all too evident by CPD's promotion (rather than discipline) of Sergeant Maton. Despite his disturbing and lengthy history of violating Casper citizens' Fourth Amendment rights against excessive force and wrongful arrest, Defendant Casper chose to reward Officer Maton with a promotion to Sergeant. CPD has clearly communicated to its officers that unconstitutional conduct is an approved and even advantageous practice, and Defendant Quirin and Defendant Lowry understood and acted upon that message from their employer.

69.     It is Casper's responsibility to properly train its officers to ensure they execute their duties consistent with the Constitution, rather than condoning clear violations of these obligations. Continued failure to condemn such conduct will inevitably result in CPD Officers violating the constitutional freedoms Casper residents in the future.

## V.      STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Excessive Force**
**(Against All Defendants)**

70.     Plaintiff hereby incorporates all other paragraphs of this Complaint.

71.     Defendants were acting under color of state law at all relevant times.

72.    Ms. Rodriguez had a clearly established Fourth Amendment right to be protected against excessive force at the hands of law enforcement personnel.

73.    Defendant Quirin unlawfully seized Ms. Rodriguez by means of excessive physical force.

74.    Defendant Quirin had no justification for seizing Ms. Rodriguez. Defendant Quirin did not even have reasonable suspicion that Ms. Rodriguez had committed a crime.

75.    No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendant Quirin's conduct.

76.    Defendant Quirin's actions were objectively unreasonable in light of the circumstances confronting him.

77.    Defendant Quirin's use of force was significantly disproportionate to the need under the circumstances and was objectively unreasonable considering the facts and circumstances of this case, including the severity of the alleged crime at issue, whether Ms. Rodriguez posed an immediate threat to the safety of the officers or others, and whether Ms. Rodriguez was actively resisting arrest or attempting to evade arrest by flight.

78.    Ms. Rodriguez did not commit any crime.

79.    At no point did Ms. Rodriguez present any immediate threat to the safety of the officers or others.

80.    Ms. Rodriguez did not attempt to flee or otherwise evade arrest.

81.    Ms. Rodriguez did not actively resist arrest or disobey the lawful directives of the defendants herein.

82.     Defendant Quirin recklessly and unreasonably created the situation in which he violently dragged, kicked, and slammed Ms. Rodriguez's body into the floor.

83.     Defendant Quirin engaged in these actions intentionally, willfully, and wantonly.

84.     Defendant Quirin engaged in these actions maliciously or with reckless or callous disregard of, or indifference to, the rights and safety of Ms. Rodriguez.

85.     Defendant Lowry failed to intervene in the use of force that was objectively unreasonable in light of the facts and circumstances confronting him, violating Ms. Rodriguez's Fourth Amendment rights.

86.     Defendant Quirin's and Defendant Lowry's conduct violated clearly established rights belonging to Ms. Rodriguez of which any reasonable officer in their position would have known.

87.     Defendant Quirin is liable for the use of excessive force against Ms. Rodriguez based on his direct use of excessive force.

88.     Defendant Lowry is liable for the use of excessive force against Ms. Rodriguez for failing to intervene and protect Ms. Rodriguez from harm at the hands of Defendant Quirin.

89.     Defendant Casper failed to properly train, supervise, and discipline its CPD officers regarding the proper use of force, resulting in Defendant Quirin's excessive use of force against Ms. Rodriguez and Defendant Lowry's failure to intervene.

90.     This inadequate training, supervision, and discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Casper.

91.     In light of the duties and responsibilities of Defendant Casper personnel – who must make decisions regarding when uses of force are appropriate – the need for scrutiny in specialized training, supervision, and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Casper is liable for its failure to properly train, supervise, and discipline its subordinate employees and agents.

92.     Such failure to properly train and supervise was the moving force behind and proximate cause of Defendant Quirin's unreasonable and excessive use of force against Ms. Rodriguez, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

93.     Such failure to properly train and supervise was the moving force behind and proximate cause of Defendant Lowry's failure to intervene in the excessive use of force against Ms. Rodriguez and constitutes an unconstitutional policy, procedure, custom, and/or practice.

94.     Ms. Rodriguez has been and continues to be damaged by Defendant's use of excessive force, which has caused her lasting and profound emotional and mental trauma.

95.     The acts or omissions of each Defendant, including the constitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Ms. Rodriguez's damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourth Amendment Violation
### Unlawful Arrest
### (Against Defendant Quirin and Defendant Casper)

96.    Plaintiff hereby incorporates all other paragraphs of this Complaint.

97.    Defendant Quirin was acting under color of state law in his actions and inactions at all times relevant to this action.

98.    Ms. Rodriguez had a clearly established Fourth Amendment right to be free from unlawful arrest.

99.    Defendant Quirin unlawfully arrested Ms. Rodriguez in violation of her Fourth Amendment rights.

100.    Plaintiff did not violate any law. At no point relevant to this incident did Defendant Quirin have either probable cause or reasonable suspicion to believe Ms. Rodriguez had committed or was in the process of committing any crime.

101.    Defendant Quirin was responding to a noise complaint. No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendant Quirin's conduct.

102.    Defendant Quirin's actions were objectively unreasonable in light of the circumstances confronting him.

103.    Defendant Quirin's arrest of Ms. Rodriguez was objectively unreasonable considering the facts and circumstances of this case. Defendant Quirin lacked probable cause that a crime had been committed and could not have lawfully arrested Ms. Rodriguez.

104.    Defendant Quirin engaged in these actions intentionally, willfully, and wantonly.

105.    Defendant Quirin engaged in these actions maliciously or with reckless or callous disregard of, or indifference to, the rights and safety of Ms. Rodriguez.

106.    Defendant Quirin's conduct violated clearly established rights belonging to Ms. Rodriguez of which any reasonable officer in their position would have known.

107.    Defendant Casper failed to properly train, supervise, and discipline its CPD employees regarding how and under what circumstances lawful arrests are to be made, as is obvious by Defendant Quirin's complete disregard for Ms. Rodriguez's Fourth Amendment right to be free from unlawful arrest.

108.    Defendant Casper is liable for the false arrest of Ms. Rodriguez because, among other things, Quirin's supervisor was in communication with Quirin regarding the lack of basis for the arrest, and allowed the arrest despite the abject lack of articulated legal basis for it, including the failure to identify facts which would constitute probable cause to believe Ms. Rodriguez had engaged in any criminal activity.

109.    This inadequate training, supervision, and discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Casper.

110.    In light of the duties and responsibilities of Defendant Casper personnel—who must make decisions regarding when lawful arrests are to be made—the need for scrutiny in specialized training, supervision, and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and supervision is so likely to result in further violations of

individuals' constitutional rights such as this one, that Casper is liable for its failure to properly

train, supervise, and discipline its subordinate employees and agents.

111.    Such failure to properly train and supervise was the moving force behind and

proximate cause of Defendant Quirin making an unlawful arrest of Ms. Rodriguez's person in

violation of her Fourth Amendment rights and constitutes an unconstitutional policy, procedure,

custom, and/or practice.

112.    Ms. Rodriguez has been and continues to be emotionally and mentally damaged

by Defendant Quirin's unlawful arrest of her person. She has been and continues to be

emotionally and mentally damaged from being forced to spend the night and the majority of the

next day in jail after being unjustifiably and violently physically assaulted by Defendant Quirin

in an indefensible display of excessive force.

113.    The acts or omissions of each Defendant, including the constitutional policy,

procedure, custom, and/or practice described herein, were the legal and proximate cause of Ms.

Rodriguez's damages.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Violation
### Retaliation
### (Against Defendant Quirin and Defendant Casper)

114.    Plaintiff hereby incorporates all other paragraphs of this Complaint.

115.    The actions of Defendants as described herein, while acting under color of state

law, intentionally deprived Ms. Rodriguez of her First Amendment right to be free from

retaliation for her protected speech.

116.    Plaintiff was engaged in First Amendment-protected expression.

117.    Plaintiff's expression did not violate any law.

118.    Defendant Quirin responded to Ms. Rodriguez's First Amendment-protected activity with retaliation, in the form of grossly excessive force and arrest.

119.    At no point during his interaction with Ms. Rodriguez did Defendant Quirin have even reasonable suspicion that she was committing any crime, and he certainly had no information that would give him probable cause.

120.    By unlawfully using force against Ms. Rodriguez and by arresting her, Defendant Quirin sought to punish her for exercising her First Amendment rights by silencing her and deterring her from speaking in the future. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

121.    Defendant Quirin's retaliatory actions were substantially motivated by Ms. Rodriguez's exercise of her First Amendment rights.

122.    At the time when Defendant Quirin retaliated against Plaintiff for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

123.    Defendant Quirin engaged in his conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

124.    Defendant Quirin retaliated against Plaintiff for engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Casper.

125.    Ms. Rodriguez was not the only person Defendant Quirin retaliated against for engaging in expressive activity – he also handcuffed Mr. Fuller, who was speaking on the phone with his father (a lawyer), after threatening that the next person to speak would be handcuffed.

126.    Defendant Casper has a custom, practice, or policy of tolerating its officers' retaliatory violations of the First Amendment of the United States Constitution.

127.    Defendant Casper failed to properly supervise and/or train its officers. The retaliatory arrest by Quirin of Ms. Rodriguez was made during and based upon consultation between Quirin and his supervisor under circumstances that demonstrate that the arrest was retaliatory and unwarranted under the totality of circumstances.

128.    The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Casper.

129.    Defendant Casper's customs, policies, and/or practices, and the decisions of its authorized supervisory personnel who had been given delegated authority to so act, and its final policymakers, were the moving force behind Defendant Quirin's violation of Plaintiff's constitutional rights.

130.    As a direct and proximate consequence of the Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

131.    Defendant Quirin's acts or omissions described herein were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical, emotional, and mental pain, and anguish Plaintiff suffered during and after the use of excessive force against her, and other compensatory and special damages.

132.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.   Declaratory, injunctive, or other equitable relief, as appropriate;

b.   Actual economic damages as established at trial;

c.   Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e.   Pre-judgment and post-judgment interest at the highest lawful rate;

f.   Attorney's fees and costs; and

g.   Such further relief as justice requires.

Dated this 14th day of December 2023.

KILLMER LANE, LLP


_/s/ Darold W. Killmer_
Darold W. Killmer
Reid Allison*
Madison Lips*
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dkillmer@killmerlane.com
rallison@killmerlane.com
mlips@killmerlane.com

*Attorneys for Plaintiff*

*Motion for admission pro hac vice forthcoming.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of all issues so triable.

DATED and SIGNED this 14th day of December 2023.

KILLMER LANE, LLP


*s/ Darold W. Killmer*
Darold W. Killmer
Reid Allison
Madison Lips
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dkillmer@killmerlane.com
rallison@killmerlane.com
mlips@killmerlane.com

*Attorneys for Plaintiff*